**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carmen Figueroa Otero, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. CIV 16-090-TUC-CKJ |
| vs. ) | |
| ) | **ORDER** |
| Jeh Johnson, Secretary for the ) | |
| Department of Homeland Security, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

    Pending before the Court is the Motion for Preliminary Injunction and/or Temporary Restraining Order (Doc. 25) filed by Plaintiff Carmen Figueroa Otero ("Otero"). A response has been filed (Doc. 27). The parties presented argument on October 26, 2016, and the Court took the matter under advisement. In light of the scheduled interview of Otero, on October 27, 2016, this Court issued a summary (Doc. 29) Order granting the request for Temporary Restraining Order and setting this matter for hearing on the request for Preliminary Injunction.[1] The summary Order informed the parties a more detailed order would follow. This is that Order. Additionally, this Order modifies the specific injunctive relief ordered in its summary Order (Doc. 29).

    Additionally, as the issues presented in the Motion to Dismiss (Doc. 17) and the Motion for Leave to File Second Amended Complaint (Doc. 18) are so interrelated to the

---

    [1]A Motion to Continue Hearing on Preliminary Injunction has been filed by Defendants. The Court's staff has been in contact with counsel to arrange for the rescheduling of the hearing. The hearing on the request for Preliminary Injunction is reset herein.

1  issues presented in the Motion for Preliminary Injunction and/or Temporary Restraining
2  Order (Doc. 25), the Court finds it is appropriate to also address these pending motions
3  herein.

4

5  *Factual and Procedural Background*

6      On February 16, 2016, Otero filed a Complaint for Declaratory and Injunctive Relief
7  against Jeh Johnson, Secretary for the Department of Homeland Security, Leon Rodriguez,
8  Director for the United States Citizenship and Immigration Services ("CIS"), John Kramer,
9  District Court Director for the Phoenix CIS, Julie Hashimoto, Director for the Tucson Field
10 Office of CIS (collectively, "Defendants").  Otero alleges she believed in good faith she was
11 a U.S. citizen until approximately May 2013.  She further alleges she should be granted
12 classification as an "immediate relative" of her husband, Mr. Alberto Otero, who is a U.S.
13 citizen and resident of Marana, Arizona.  An "immediate relative" of a U.S. citizen is
14 instantly "eligible to receive an immigrant visa," as long as she can demonstrate she "was
15 inspected and admitted or paroled into the United States." See INA § 201(b), 8 U.S.C. §
16 1151(b); INA § 245(a), 8 U.S.C. 1255(a).

17     The United States Department of Homeland Security ("DHS"), Citizenship and
18 Immigration Services, Tucson Field Office ("TFO"), denied Otero's application on September
19 28, 2015, stating it was denying the application because Otero had not been "inspected and
20 admitted or paroled into the United States," because she had used her improperly-issued U.S.
21 passport to gain entry into the country as a U.S. citizen in May 2013.  The decision denying
22 the application states, *inter alia*:

23     You indicated on your Form I-485 that your last entry into the United States was at
   or near San Ysidro, California on or about May 2013, using a United States Passport.
24     At that time, you were not inspected, admitted, or paroled.  Because you are unable
   to show that you were inspected and admitted or paroled, or that you are exempt from
25     that requirement, you are ineligible as a matter of law to adjust status in the United
   States.  You have not established that you are eligible for adjustment under INA
26     245(i).  Therefore, USCIS must deny your Form I-485.  See INA sections 245(a) and
   245(i); 8 CFR 245.10.
27
28     The Supreme Court has recognized that a United States citizen is not subject to the
   same scrutiny and requirements as an alien during the process of inspection and

admission. *Reid v. INS*, 420 U.S. 619, 624-25 (1975).  Immigration authorities more closely examine the right of aliens to enter the country and they require and obtain information and records, such as fingerprints and registration forms, to help keep track of aliens who have been admitted after they have entered the country. Id. at 625. Aliens who enter by falsely claiming to be a United States citizen significantly frustrate the process for inspecting incoming aliens and effectively put themselves in a position that is "comparable to that of a person who slips over the border and who has, therefore, clearly not been inspected." Id. (quoting Goon Mee Heung v. INS, 380 F.2d 236, 237 (1st Cir. 1967)).

The BIA noted in Quilantan, 25 I&N Dec. at 293, that an immigration officer is not empowered to inspect a United States citizen in the same manner as an alien. Acknowledging this difference in treatment between citizens and aliens, the BIA held there that an alien who entered the United States under a false claim of United States citizenship cannot be considered to have been inspected. Id. (citing Reid v. INS, 492 F.2d 251, 255 (2d Cir. 1974); Matter of S-, 9 I&N Dec. 599, 600 (BIA 1962)). **There is no reason to diverge from the long-standing rule that an alien who enters the United States by falsely claiming United States citizenship, knowingly or otherwise, effectively eludes the procedural regularity of inspection by an immigration officer.  See Reid v. INS, 420 U.S. at 624-25; Matter of F-, 9 I&N Dec. 54 (Reg'l Comm'r, Ass't Comm'r 1960).  It must therefore hold that such an entry does not constitute an admission as that term is defined in section 101(a)(13)(A) of the Act.**

The evidence of record shows that, when you filed your application, your were present in the United States contrary to law because you were present without admission or parole.  You are not authorized to remain in the United States and should make arrangements to depart as soon as possible.  Failure to depart may result in your being found ineligible for immigration benefits and inadmissible to the United States in the future.  See section 212(a)(9)(B) of the INA.

Motion for Leave to File Second Amended Complaint, Exhibit I, Attachment 1 (Doc. 18-10)

(emphasis added).[2]

Otero requested the matter be reopened or reconsidered on October 16, 2015.

Defendants denied Otero's request on December 18, 2015.  That decision states *inter alia*:

. . . The denial did not address a "knowingly" false claim to United States citizen and denial was not based on a false claim to United States citizen, rather that applicant could not have been inspected and admitted because the entry was as a United States citizen.  It should be noted that even though it was a false claim to United States citizenry the applicant has not been charged or found inadmissible for false claim to United States citizen.

* * * * *

The denial did not contain Title 8 of the Code of Federal Regulations, Part 1235 –

---

[2]Otero alleges a large portion of this decision is taken from *Matter of Pinzon*, 26 I. & N. Dec. 189, 191 (BIA 2013), with a modification that alters the meaning of *Pinzon*.  The bolded portion is not included in *Pinzon*.

1    Inspection of Persons applying for admission which states:

2    Title 8 – Aliens and Nationality [8 CFR]

3    PART 1235 – INSPECTION OF PERSONS APPLYING FOR ADMISSION [8 CFR 1235]

4
5    (b) *U.S. citizens.* A person claiming U.S. citizenship must establish that fact to the examining officer's satisfaction and must present a U.S. passport if such passport is required under the provisions of 22 CFR part 53. If such applicant for admission fails
6    to satisfy the examining immigration officer that he or she is a U.S. citizen, **he or she shall thereafter be inspected as an alien.**

7
8    Counsel has not provided any legal basis identifying that aliens and United States citizens are inspected and admitted in the same manner. In fact each of the precedent decisions glaringly outline the significant difference in inspection and admission of
9    aliens as related to entry of a United States citizen. Declaring the entry to be regular is a disregard for the laws pertaining to aliens and those relegated for United States
10   citizens.

11   * * * * *

12   Motion for Leave to File Second Amended Complaint, Exhibit J (Doc. 18-11).

13   On June 15, 2016, Defendants issued a decision that states:

14   . . . USCIS moves to grant the Service Motion to Reopen under 8 CFR 103.5(a)(5) based on the failure to establish whether your false claim to United States citizenship
15   was made knowingly. Thus, the following order is entered:

16   ORDER:    It is ordered that the motion be granted and the I-485 application be returned to a pending status.

17
18   Motion for Leave to File Second Amended Complaint, Exhibit K (Doc. 18-12). Otero asserts

19   Defendants had scheduled a re-interview of her for October 28, 2016. Otero asserts:

20   Subjecting Ms. Figueroa Otero to another interview on the subject of whether she made a knowing false claim to citizenship would transform questioning into interrogation, and would change the nature of the administrative proceedings from
21   non-adversarial to adversarial, which is prohibited. *See, e.g.*, USCIS Adjudicator's Field Manual ("AFM"), Chapter 15.1(a) (2014) ("Interviews conducted by
22   adjudication officers are non-adversarial in nature, as opposed to a court proceeding involving two attorneys where each advocates a particular position."); *see also id.*,
23   Chapter 15.4(a) ("Interview proceedings are not to be adversarial in nature. The purpose of the interview is to obtain the correct information in order to make the
24   correct adjudication of the case, not to prove a particular point or to find a reason to deny the benefit sought. The purpose is to cover (and discover) all the pertinent
25   information, both favorable and unfavorable to the applicant.).""

26   Proposed SAC (Doc. 24-1), p. 14 (emphasis removed).

27   Otero requests this Court reverse the agency decision not to reopen or reconsider its

28

1  denial of Otero's adjustment of status application,[3] order Defendants to grant Otero's

2  adjustment of status application, and retain jurisdiction during the adjudication of the

3  adjustment of status application in order to ensure compliance with the Court's orders.

4        An Amended Complaint (Doc. 10) was filed.  The amendment substituted Al

5  Gallmann for Jon Kramer as a defendant.

6        On June 17, 2016, a Motion to Dismiss Case (Doc. 17) was filed.  Defendants assert

7  CIS vacated the challenged denial and reopened Otero's I-485 application. Defendants assert

8  that, because CIS's action is no longer final, it cannot provide the basis for subject matter

9  jurisdiction under the Administrate Procedures Act ("APA"), 5 U.S.C. §§ 501, et seq.

10  Defendants also assert the Court cannot grant the requested relief of ordering Defendants to

11  grant Otero's adjustment status because the authority to grant an adjustment of status is

12  within the discretion of the agency, not the district court.

13        On June 21, 2016, Otero filed a Motion for Leave to File a Second Amended

14  Complaint ("SAC") (Doc. 18).  The proposed amendments include a claim regarding the

15  reopening of the proceeding by CIS and asking the Court to direct CIS to perform the

16  non-discretionary duty of permitting Otero to submit a brief within 30 days of the service of

17  the CIS motion to reopen her case.  Additionally, the request for relief has been modified to

18  correctly seek relief that this Court may provide.

19

20  *Standard for Injunctive Relief*

21        The standard for a temporary restraining order ("TRO") is the same as for a

22  preliminary injunction; a preliminary injunction is "an extraordinary and drastic remedy, one

23  that should not be granted unless the movant, by a clear showing, carries the burden of

24  persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation

25  omitted) (emphasis in original).  The Ninth Circuit has adopted two tests a district court must

26

27        [3]Defendants granted its own motion to reopen after having denied Otero's request to

28  reopen.

use when deciding whether to grant a preliminary injunction. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (finding District Court "made an error of law" by employing only one test when denying preliminary injunction). First, a plaintiff can attempt to satisfy the four-part test adopted by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Under the *Winter* test, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. If a plaintiff cannot meet the *Winter* test, he may attempt to satisfy the second test by showing there are "serious questions going to the merits," the balance of hardships tips sharply in his favor, there is a likelihood of irreparable injury, and the injunction is in the public interest. *Cottrell*, 632 F.3d at 1135. This latter "sliding scale approach" allows a plaintiff to make a lesser showing of likelihood of success provided he will suffer substantial harm in the absence of relief. *Id.* at 1133. The Ninth Circuit has explained that "these two alternatives represent 'extremes of a single continuum,' rather than two separate tests. Thus, the greater the relative hardship to the moving party, the less probability of success must be shown." *Immigrant Assistant Project of Los Angeles County Fed'n of Labor (AFLCIO) v. INS*, 306 F.3d 842, 873 (9th Cir. 2002) (citation omitted).

TROs are governed by Fed.R.Civ.P. 65(b). A TRO lasts for only 14 days and may only be extended an additional 14 days for good cause shown or upon consent of the opposing party. Fed.R.Civ.P. 65(b). If a TRO is granted, the motion for a preliminary injunction must be heard at the earliest possible time and takes precedence over all matters except older matters of the same character. Id.

Under the rule, a TRO may not be issued without imposition of a bond or other security upon the applicant. Fed.R.Civ.P. 65(c). The district court, however, has wide discretion in setting the amount of the bond. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). In fact, the amount may be set at zero if there is no evidence the party will suffer damages from the injunction. *Id.*

*Motion for Preliminary Injunction and/or Temporary Restraining Order* (Doc. 25)

Under the APA, agency action is subject to judicial review only when it is either:  (1) made reviewable by statute; or (2) a "final" action "for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  As there is no statute that authorizes judicial review over denials of status adjustment, the issue is whether CIS's denial of Ortero's request for an adjustment of status has no other adequate remedy.  Defendants concede subject matter jurisdiction existed at the time of the filing of the action, but assert that, because the denial was vacated, there is no denial of adjustment of status that now confers jurisdiction.  Specifically, Defendants assert there is no final agency action that is subject to review.  *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985) ("The finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.")

*Likelihood of Success – Subject Matter Jurisdiction*

Defendants assert that, although jurisdiction is usually determined from the filing of the relevant complaint, after-arising events can defeat jurisdiction by negating the ripeness of a claim.  *Hose v. United States Immigration & Naturalization Serv.*, 180 F.3d 992, 996 (9th Cir. 1999); *see also, Cabaccang v. United States Citizenship & Immigration Servs.*, 627 F.3d 1313, 1317 (9th Cir. 2010) (holding that CIS's initiation of removal proceedings while a complaint was pending rendered the claims not ripe for judicial review and stating that "[t]o hold otherwise would allow plaintiffs to confer jurisdiction on the federal courts simply by racing to the courthouse before the government initiates removal proceedings.").

Further, Defendants point out that the regulation permits them to *sua sponte* reopen a proceeding.  Indeed, the regulation is very clear that generally the proceeding can be reopened *sua sponte* by Defendants.  See 8 C.F.R. § 103.5(a)(5); *Net-Inspect, L.L.C. v. United States Citizenship and Immigration Services*, C14-1514-JLR, 2015 WL 880956, at *5 (W.D. Wash. Mar. 2, 2015) ("Contrary to Net-Inspect's contention, USCIS's regulations permit the agency to reopen and reconsider petitions both on its own motion and on motions

1   by affected parties."); *True Capital Mgmt., LLC v. United States Dep't of Homeland Sec.*, No.

2   13-261-JSC, 2013 WL 3157904, at *3 (N.D. Cal. June 20, 2013) (finding that USCIS's

3   regulations permit it to reopen a petition *sua sponte* and issue a request for evidence).

4   However, there is a question whether the general rule which prohibits reopening after judicial

5   review is sought nullifies Defendants' actions.

6       Also, Defendants assert the proposed SAC does not cure the fatal flaw of this action

7   – that there is no final agency action for the Court to review.  *See True Capital Mgmt., LLC*,

8   2013 WL 3157904, at *4 (concluding that the court did not have jurisdiction under the APA

9   after CIS reopened plaintiff's visa application *sua sponte* "because there is no longer a final

10  agency decision to review."); *see also Bhasin v. United States Dep't of Homeland Sec.*, 413

11  F. App'x 983, 985 (9th Cir. 2011) (determining that CIS's sua sponte reopening of an I-130

12  visa petition rendered non-final the agency's prior order denying the petition and holding that

13  in such circumstances "the denial is not a 'final agency action' under 5 U.S.C. § 704 and is

14  not subject to judicial review under the Administrative Procedure Act.").  If, however,

15  Defendants did not have the authority to reopen the proceeding after judicial review was

16  initiated, as discussed *supra*, there is still a final agency action in place in this case.

17      As to whether the matter could be reopened after judicial review was sought, Otero

18  asserts *Cabaccang v. USCIS*, 627 F.3d 1313, 1317 (9th Cir. 2010), prohibits Defendants from

19  reopening Otero's application, and therefore forcing her to a subsequent interview, without

20  first receiving permission to do so from this Court.  Otero asserts that, without pending

21  removal proceedings against Otero, agency action remains final, and exclusive jurisdiction

22  over the matter remains vested in the District Court. *Cabaccang*, 627 F.3d at 1317 ("Without

23  a pending removal proceeding, a denial of status adjustment is final because there is no

24  appeal to a superior administrative authority.  On the other hand, when removal proceedings

25  are pending, further administrative relief is available.").  Indeed, Otero asserts that cases on

26  point have historically disapproved of agency attempts to "divest the federal courts of

27  jurisdiction by unilaterally reopening its administrative proceedings." *Goede v. Colvin*,

28  CV-09-01777-SMS, 2013 WL 1731070, *1 (E.D. Cal. 2013) (citing *Doctors Nursing &*

1    *Rehab. Ctr. v. Sebelius*, 613 F.3d 672, 676-77 (7th Cir. 2010); *Jackson v. Nicholson*, 449

2    F.3d 1204, 1208 (Fed. Cir. 2006); *Cerullo v. Derwinski*, 1 Vet. App. 195, 196-99 (1991)).

3    "The reason is simple: otherwise, 'a litigant could deprive the court of jurisdiction at any and

4    every critical juncture.'" *Goede*, 2013 U.S. Dist. LEXIS 57638 at 4 (quoting *Cochran v.*

5    *Birkel*, 651 F.2d 1219, 1222 (6th Cir. 1981)).

6         Otero cites to the Seventh Circuit Court of Appeals for the assertion that "if

7    jurisdiction exists at the outset of a suit, subsequent procedural events will not divest the

8    court of that original jurisdiction." *Doctors Nursing & Rehab. Ctr.*, 613 F.3d at 677 (citing

9    *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 194 (7th Cir. 2008)). Otero

10   cited to *Doctors Nursing & Rehab. Ctr.* to point out that "Congress has specifically spoken

11   on the issue of when and how the agency can reopen its administrative proceedings after

12   judicial review begins." *Id*. Counsel for Otero stated during argument that there is no similar

13   provision in this immigration context.

14        The *Doctors Nursing & Rehab. Ctr.* court distinguished another Seventh Circuit case,

15   *Gao v. Gonzales*, 464 F.3d 728 (7th Cir. 2006) because "*Gao* was fundamentally a mootness

16   case," and 2) "*Gao* did not establish a general rule that agencies may divest courts of

17   jurisdiction by reopening final decisions." "Rather, *Gao* was careful to justify its holding

18   based on the particulars of the immigration context." *Id*. More importantly, the court further

19   clarified that the "immigration context" of which it spoke referred to the "statutory scheme"

20   that empowered the Board of Immigration Appeals (BIA) "to consider, and decide, the very

21   same issue that was pending before the court." *Id*.

22        Otero argues that the statutory scheme at issue in *Gao*, Part 1003, et seq. of Title 8 of

23   the Code of Federal Regulations, is not the same statutory scheme that applies to this case,

24   Part 103, Subpart A, of Title 8 of the Code of Federal Regulations. Otero points out that the

25   statutory scheme that applies to the BIA is tailored to an "agency" that is, by definition, an

26   administrative law appellate court. Therefore, the BIA's statutory scheme provides greater

27   discretion and power to the BIA to *sua sponte* reopen its own decisions. Otero argues CIS

28   does not enjoy such leeway.

1    Otero also distinguishes the cases relied upon by Defendants. In *True Capital Mgmt.*,

2    when a petition to employ an alien with an H1-B visa by the plaintiff company was denied,

3    plaintiff filed a declaratory judgment action in the federal court. While the action was

4    pending, CIS *sua sponte* reopened the case and issued a formal request for additional

5    evidence ("RFE") pursuant to 8 C.F.R. § 103.2(b)(8)(iii). 2013 U.S. Dist. LEXIS at 3-4, 11.

6    Otero asserts that court's reliance on *Bhasin* and *Cabaccang* was misplaced:

7            In *Bhasin*, the Ninth Circuit considered the question of whether CIS's *sua sponte*
8            reopening of a plaintiff's I-130 visa petition rendered its prior order denying the
             petition non-final. *See True Capital Mgmt.*, 2013 U.S. LEXIS at 6-7. However, in
             *Bhasin*, the Ninth Circuit explained that after the underlying proceedings in that case
9            were reopened by CIS, the plaintiff's petitioner wife apparently withdrew her I-130
             petition upon which plaintiff's claim rested. *Bhasin*, 413 Fed. Appx. 983 at 2. The
10           Ninth Circuit therefore concluded that the withdrawal of the petition mooted
             challenges to the denial and, as such, "there was no longer a case or controversy
11           sufficient to satisfy Article III standing." *Id.*, 413 Fed. Appx. 983 at 3. *Bhasin*, then,
             is similar to the Seventh Circuit's opinion in *Gao*, in that the courts in each case
12           upheld the district courts' dismissals of the petitioners' federal lawsuits, not just
             because the immigration agencies reopened their proceedings, but because there was
13           simply no longer any order left to review. But that is simply not the situation in Ms.
             Figueroa-Otero's case.
14
     Reply to Response to Motion for Leave to File SAC (Doc. 24), pp. 8-9. Further, Otero points

15   out the *Cabaccang* court endorsed the general rule that "district courts lack jurisdiction to

16   review denials of status adjustment if removal proceedings are pending[,]" 627 F.3d at 1317,

17   but also stated that "[w]ithout a pending removal proceeding, a denial of status adjustment

18   is final because there is no appeal to a superior administrative authority. On the other hand,

19   when removal proceedings are pending, further administrative relief is available." *Id.*

20   (citations omitted). Further, Otero asserts the *True Capital Mgmt.* and *Net-Inspect* courts

21   failed to grasp the differences between the immigration context versus the removal context

22   made in *Gao* and *Cabaccang*.

23           While Otero's argument appears well-reasoned, the Ninth Circuit Court of Appeals

24   has not specifically addressed the issue before this Court. Rather, it has recognized further

25   administrative relief is available if a pending removal proceeding exists. *Cabaccang*, 627

26   F.3d at 1317 ("Without a pending removal proceeding, a denial of status adjustment is final

27   because there is no appeal to a superior administrative authority. On the other hand, when

28

removal proceedings are pending, further administrative relief is available.").  In doing so, the Ninth Circuit has not discussed the status of a case prior to the initiation of the removal proceeding nor did it discuss the Seventh Circuit cases or their analysis.  The conclusion sought by Otero would mean that, when an citizenship/immigration case is relatively new (as in this case), Defendants cannot reopen the matter, but if at some time in the future removal proceedings are initiated, at least one of these same Defendants (or a similarly situated defendant) would be permitted to reopen the matter.  Indeed, this matter would then be subject to the BIA, as discussed in *Cabaccang*.  As a practical matter, it does not make sense that the matter could not be reopened now, but at some unknown time in the future it could be reopened.

However, in *Cabaccang*, the Ninth Circuit did discuss the "crucial" distinction a pending removal proceeding makes:

> Without a pending removal proceeding, a denial of status adjustment is final because there is no appeal to a superior administrative authority. *Id.*; *see also supra* n. 2. On the other hand, when removal proceedings are pending, further administrative relief is available. [*Pinho v. Gonzales*, 432 F.3d 193, 201–02 (3d Cir. 2005).] Accordingly, we join our sister circuits in holding that district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending. *Howell v. INS*, 72 F.3d 288, 292-93 & n. 5 (2d Cir. 1995); *Randall v. Meese*, 854 F.2d 472, 481-82 (D.C.Cir. 1988).

*Cabaccang*, 627 F.3d at 1317.  The *Pinho* court also discussed the importance of an administrative appeal:

> [I]n this case, Pinho's adjustment of status application was not filed because of pending deportation proceedings, but rather because of his marriage to a U.S. citizen. Because the Department of Homeland Security ("DHS") did not provide an avenue for administrative appeal of the AAO decision, Pinho had no further opportunity to challenge the legality of the decision within the agency, and would have none at all, were he forced to await deportation proceedings that the agency may or may not choose to institute.

*Pinho v. Gonzales*, 432 F.3d 193, 201 (3d Cir. 2005).  The *Pinho* court also recognized that a "ruling that Pinho must wait for possible future deportation proceedings in order to challenge the AAO's legal determination would sit ill at ease with *Darby* [*v. Cisneros*, 509 U.S. 137, 154 (1993) (agency action is final when the "aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule . . .").  The court also

- 11 -

stated:

> We hold that an AAO decision is final where there are no deportation proceedings pending in which the decision might be reopened or challenged.  But even if the possibility of renewing an adjustment application in future deportation proceedings were thought to cast doubt on the finality of an AAO decision, this case falls into one of the categories "in which the interests of the individual weigh heavily against requiring administrative exhaustion," *McCarthy*, 503 U.S. at 146, 112 S.Ct. 1081, namely, circumstances in which an "indefinite timeframe for administrative action," *id.* at 147, 112 S.Ct. 1081 results in prejudice to the individual who must await that action.  The decision whether or not to institute deportation proceedings is entirely within the discretion of the agency.  There are no steps that Pinho can take to force the question in order to have his claim resolved. If the only route to the courts is through deportation proceedings, then the agency retains sole control over whether an individual's purely legal claim – one which has not been made non-reviewable by statute – may ever be brought before the courts.  Such a result would be plainly at odds not only with the APA, but also with broader principles of separation of powers.

*Pinho*, 432 F.3d at 202 (3d Cir. 2005) (footnotes omitted).

Although *Pinho* was not discussing the re-opening of a status of adjustment application, the principles discussed in *Pinho* and approved of in *Cabannag*, including an administrative appellate procedure, indicate the Ninth Circuit has approved the analysis in *Gao* which emphasized the BIA's authority to decide an issue while it is pending before the Seventh Circuit.  There is no similar authority afforded to CIS.

Notably, the Ninth Circuit also stated it was joining its "sister circuits in holding that district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending[,]" citing *Howell* and *Randall*.  *Cabaccang*, 627 F.3d at 1317. In *Howell*, that Second Circuit determined that, because deportation proceedings were pending, the district court did not have jurisdiction to review the adjustment of status denial. Additionally, in *Randall*, the D.C. Circuit stated, in affirming the district court's decision to dismiss the complaint while deportation proceedings were ongoing, that it was assuring "that [the] eventual court review will be enlightened by a full record, including the Board of Immigration Appeals' decision, and that this court avoids premature blockage of, or interference with, regulatory actions Congress has assigned to other government bodies." 854 F.2d at 482.

It seems clear the Ninth Circuit's decision in *Cabannag* relied upon the "crucial" distinction of the removal or deportation proceeding in determining whether an adjustment

1   of status proceeding is final, rather than a general ongoing "immigration" proceeding as we

2   have here.  Therefore, the Court finds it appropriate to interpret the Ninth Circuit's statement

3   that "[w]ithout a pending removal proceeding, a denial of status adjustment is final because

4   there is no appeal to a superior administrative authority[,]" 627 F.3d at 1317, to apply only

5   to removal or deportation proceedings rather than expand it to include the reopening by CIS

6   of an adjustment of status application.  The general rule that an agency may not divest a

7   federal court of jurisdiction by unilaterally reopening its administrative proceedings, *Goede*,

8   2013 WL 1731070 at *1, applies in this case.  The Court finds, therefore, Otero has

9   established a likelihood of success in establishing subject matter jurisdiction in this case.

10

11   *Likelihood of Success – Merits of Claim*

12      Otero must also establish a likelihood of success on the merits of her claims to warrant

13   injunctive relief.  Otero asserts Defendants misapplied controlling law when it issued its

14   decisions denying her application for adjustment of status and motion for reconsideration.

15   She further asserts Defendants have never denied this.

16      As previously stated, Defendants stated they were denying Otero's application for

17   adjustment of status because Otero had not been inspected and admitted or paroled into the

18   United States and implies she had used her improperly-issued U.S. passport to gain entry into

19   the country as a U.S. citizen in May 2013.  Motion for Leave to File Second Amended

20   Complaint, Exhibit I, Attachment 1 (Doc. 18-10).  Defendants did not allege or conclude that

21   Otero had fraudulently used her passport or claimed U.S. citizenship in a knowingly false

22   manner, but based its denial solely on the fact that Otero was not actually entitled to be

23   inspected and admitted as a citizen in May 2013, regardless of her good faith.

24      Although the decisions of Defendants cited to *Matter of Quilantan*, 25 I. & N. Dec.

25   285, 285 (BIA 2010), the decisions did not acknowledge that the *Quilantan* court determined

26   that an unchallenged entry of a person who gives an unknowingly false suggestion or claim

27   of citizenship to a border inspector has long been considered procedurally regular.  25 I &

28   N *Dec*. at 293; *see also Matter of Arguellin*, 17 I & N Dec. 308 (BIA 1980).  In light of this

1   authority, the Court finds Otero has established she is likely to succeed on the merits of at

2   least one of her original claims and obtain at least one of her proposed amended requests for

3   relief.  *See* Discussion Re:  Motion for Leave to File SAC, *infra*.

4

5   *Irreparable Harm and Public Interest*

6          As previously discussed, the *Pinho* court stated:

7          The decision whether or not to institute deportation proceedings is entirely within the
           discretion of the agency.  There are no steps that Pinho can take to force the question
8          in order to have his claim resolved.  If the only route to the courts is through
           deportation proceedings, then the agency retains sole control over whether an
9          individual's purely legal claim – one which has not been made non-reviewable by
           statute – may ever be brought before the courts.  Such a result would be plainly at
10         odds not only with the APA, but also with broader principles of separation of powers.

11  *Pinho*, 432 F.3d at 202 (3d Cir. 2005) (footnotes omitted).  Here, if Defendants actions are

12  permitted to go unchecked, Defendants would retain sole control over whether Otero's claim

13  may ever be brought before the courts.  Further, Otero has been advised that she is "not

14  authorized to remain in the United States and should make arrangements to depart as soon

15  as possible.  Failure to depart may result in [her] being found ineligible for immigration

16  benefits and inadmissible to the United States in the future."  Motion for Leave to File

17  Second Amended Complaint, Exhibit I, Attachment 1 (Doc. 18-10).  Additionally, it is not

18  known what consequences Otero faces if she remains in administrative limbo.  *See e.g.*

19  *Baliles v. Donovan*, 549 F.Supp. 661, 666 (W.D.Va. 1982) (using terms judicial,

20  administrative, and legislative limbo in factually and legally unrelated case).  For example,

21  the Court does not know if Otero's status will affect her ability to be employed, drive, etc.

22  The Court finds Otero has established she will suffer irreparable harm if her requested

23  injunctive relief is not granted.[4]

24  _____

25         [4]The Court does not finds Otero would suffer from sufficient irreparable harm from
    a second interview to warrant injunctive relief as she has asserted.  Otero's argument as to
26  the possible harm resulting from a second interview is speculative.  While there is a risk
    Otero may state something unfavorable to her case during the interview, the Court does not
27  find this presents anything more than a minimal hardship.  Indeed, while counsel for Otero
28  argued she should not reasonably be expected to be subject to the interview process again,

Further, for these same reasons and because agency attempts to "divest the federal courts of jurisdiction by unilaterally reopening its administrative proceedings" are disfavored, *Goede*, 2013 WL 1731070 at *1, the Court finds there is a public interest in granting the requested injunctive relief.

*Balance of Equities*

The Court finds the balance of equities does not favor either party. While the concerns of Otero, i.e. "the interests of the individual[,] weigh heavily against requiring administrative exhaustion," *Pinho*, 432 F.3d at 202 (citations omitted), Defendants also have an interest in fully and correctly resolving the claims before them.

*Conclusion as to Injunctive Relief*

After balancing the factors, the Court finds granting injunctive relief is appropriate in this case. It is highly likely Otero will succeed on the merits of at least one of her claims and there is a likelihood she would suffer irreparable injury if the injunctive relief is not granted. The Court will grant Otero's request.

*Requirement of a Bond Upon Issuance of a Temporary Restraining Order*

Under the rule, a TRO may not be issued without imposition of a bond or other security upon the applicant:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper

---

the Court simply does not find this to be an onerous burden. The Supreme Court has "recognized that the right to acquire American citizenship is a precious one" and that "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 505-06 (1981). While Otero's circumstances may be more sympathetic than the average applicant, this does not change the fact that "[n]o alien has the slightest right to naturalization unless all statutory requirements are complied with." *Id*. at 506 (citation omitted). A re-interview in this situation does not constitute a significant hardship nor is it likely to cause irreparable harm.

1
2
> to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  The United States, its officers, and its agencies are not required to give security.

3  Fed.R.Civ.P. 65(c).  The district court, however, has wide discretion in setting the amount

4  of the bond.  *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d

5  878, 882 (9th Cir. 2003). In fact, the amount may be set at zero if there is no evidence the

6  party will suffer damages from the injunction.  *Id*.

7          Here, no evidence has been presented that Defendants will suffer any damages from

8  the injunction.  The Court finds, in its discretion, that a bond/security of $0 is appropriate.

9

10  *Motion for Leave to File Second Amended Complaint* (Doc. 18)

11          Otero requests leave to file a SAC.  The proposed SAC includes allegations regarding

12  Defendants compliance with 8 C.F.R. § 103.5(a) and modifies the request for relief to

13  comport with standards outlined by Defendants in their Motion to Dismiss.  Defendants

14  assert, however, that Otero has not complied with LRCiv 15.1, which requires the submission

15  of a strikeout copy of the proposed amended document to be submitted with the motion.  In

16  this case, Otero has submitted a proposed strikeout copy with her Reply.  The Court does not

17  find it appropriate to deny the request on this basis.

18          Defendants also assert the submission of this SAC is not appropriate.  In determining

19  whether an amended pleading should be permitted, courts generally consider five facts:

20  undue delay, bad faith, futility of amendment, prejudice to the opposing party, and whether

21  the party has previously amended their pleadings.  *Ahlmeyer v. Nev. Sys. of Higher Educ.*,

22  555 F.3d 1051, 1055 n.3 (9th Cir. 2009).

23          In this case, the Court does not find Otero has acted in bad faith.  Indeed, as pointed

24  out by her counsel, it is only because one Defendant had been renamed in the First Amended

25  Complaint that she now seeks to submit a SAC.  At that time, the events raised in the SAC

26  had not occurred.  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.

27  1989) (failure to cure deficiencies by previous amendments is factor to be considered).  The

28  Court also finds Otero has not exercised undue delay in seeking to file the SAC.  Shortly

after learning Defendants had scheduled her for another interview and were not affording her an opportunity to submit a brief prior to that interview, Otero filed her request to file a SAC.

Additionally, the Court finds Defendants would not be prejudiced by the proposed amendment. It is this consideration that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The Court considers that "generally a party will not be deemed prejudiced by an amended pleading if the amendment relates to the same conduct, transaction, or occurrence alleged in the original pleading, or if the opposing party is otherwise aware of the facts contained in the amended pleading." 61A Am. Jur. 2d Pleading § 724, *citations omitted*. Here, the proposed amendment concerns the same all-encompassing status of adjustment proceeding that is at issue in the original claims. Further, as the allegations relate to the conduct of Defendants, the Court finds Defendants are aware of these additional facts.

The Court also considers whether the proposed amendments are futile based on subject matter jurisdiction and Otero's incorrect interpretation of 8 C.F.R. § 103.5 as argued by Defendants. As previously discussed, this Court finds it has subject matter jurisdiction over this matter.

As to whether Otero has incorrectly interpreted 8 C.F.R. § 103.5, the applicable regulation states:

> (a) Motions to reopen or reconsider in other than special agricultural worker and legalization cases –
>
> (5) Motion by Service officer –
>
> > (i) Service motion with decision favorable to affected party. When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision in order to make a new decision favorable to the affected party, the Service officer shall combine the motion and the favorable decision in one action.
> >
> > (ii) Service motion with decision that may be unfavorable to affected party. When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after service of the motion to submit a brief. The officer may extend the time period for good cause shown. If the affected party does not wish to submit a brief, the affected party may waive the 30–day period.

8 C.F.R. § 103.5(a).  As Defendants' action does not include a favorable decision, Otero

asserts Defendants' actions are under 8 C.F.R. § 103.5(a)(5)(ii).  In other words, Defendants'

motion to reopen was with a decision that may be unfavorable to Otero.  Under that

provision, Defendants must give Otero "30 days after service of the motion to submit a brief

apply."  *Id*.

Otero asserts this action is non-discretionary under the regulation, and because

Defendants did not give Otero a chance to submit a brief, Defendants have acted

unconstitutionally.

Defendants interpret the regulation differently.  Specifically, they assert:

> Under Plaintiff's interpretation of subsection (ii), the Service must give an applicant notice of its intent to reopen proceedings, allow the applicant 30 days to file a brief on the issue of reopening the proceedings, and only then can the Service reopen proceedings or reconsider a prior decision.  Plaintiff reads a requirement into the regulation that is not there.  The phrase in subsection (ii) that states:  "When a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision . . ." permits a Service officer to reopen proceedings sua sponte, and implies that after the officer has so moved, the matter is reopened.  After the Service officer has reopened the proceedings, if he determines that the new decision may be unfavorable to the applicant, he must give the applicant 30 days to file a brief.  If the brief fails to establish the applicant's eligibility, the Service officer must issue a new decision denying the application.

> The plain language of 8 C.F.R. § 103.5(a)(5) permits USCIS to reopen proceedings sua sponte, and only requires notice to the applicant and an opportunity to respond in the event USCIS's decision on the pending application may be unfavorable.  Therefore, USCIS's sua sponte decision to reopen proceedings without first giving Plaintiff an opportunity to contest reopening did not violate its own regulations or Plaintiff's due process rights.  *See Net-Inspect, L.L.C. v. United States Citizenship and Immigration Services*, C14-1514-JLR, 2015 WL 880956, at *5 (W.D. Wash. Mar. 2, 2015) ("Contrary to Net-Inspect's contention, USCIS's regulations permit the agency to reopen and reconsider petitions both on its own motion and on motions by affected parties."); *True Capital Mgmt., LLC v. United States Dep't of Homeland Sec.*, No. 13-261-JSC, 2013 WL 3157904, at *3 (N.D. Cal. June 20, 2013) (finding that USCIS's regulations permit it to reopen a petition sua sponte and issue a request for evidence).  Plaintiff's proposed second amended complaint does not cure the fatal flaw of this action – that there is no final agency action for the Court to review.

Response to Motion for Leave to File SAC (Doc. 20), pp. 5-6.  However, the cases cited by

Defendants do not discuss the specific issue of how to interpret this regulation.

An initial reading of the regulation leads to the conclusion Otero reached.  Simply put,

1   if Defendants' argument is accepted, the use of "motion" in the phrase "give the affected

2   party 30 days after service of the motion to submit a brief" would mean something other than

3   its plain meaning – specifically, it would mean order or decision.  However, upon further

4   contemplation, when the Court considers the caption of the subsection to place the statement

5   in context; the caption arguably qualifies every mention of "motion" in the subsection.

6   Under this interpretation, the phrase would then state:  "give the affected party 30 days after

7   service of the motion [with decision that may be unfavorable to affected party] to submit a

8   brief[.]"  In other words, it would then only be after the decision that Otero could submit a

9   brief (or, as Defendants state, within 30 days after the service officer decides the decision

10  may be unfavorable).

11      The interpretation urged by Defendants does not constitute a plain reading of the

12  regulation.   Rather, to reach the result urged by Defendants, mental jiujitsu must be

13  employed.   Otero's interpretation of the regulation constitutes a plain reading of the

14  regulation.  It gives effect to the plain meaning of the word "motion."  Moreover, in the

15  context of considering the caption to replace the word "motion,", to more clearly reach the

16  interpretation argued by Defendants, the regulation would have to state:  "give the affected

17  party 30 days after service of the motion [with decision that IS unfavorable to affected party]

18  to submit a brief[.]"  Further, unlike subsection 8 C.F.R. § 103.5(a)(5)(i), this subsection does

19  not require the motion and decision be included in one document – this would seem to

20  recognize the motion is made first, then presumably an opportunity for a claimant to submit

21  a brief, and then the issuance of a decision.

22      Defendants also point out that other regulations provide they may request additional

23  evidence.  8 C.F.R. § 103.2(b)(8)(iii) (stating that if the initial evidence submitted does not

24  establish eligibility, USCIS may "request more information or evidence from the application

25  or petitioner, to be submitted within a specified period of time as determined by USCIS");

26  *True Capital Mgmt., LLC*, 2013 WL 3157904 at *3 ("Section 103.5(a)(5) . . . does not

27  preclude Defendants from asking for additional evidence before deciding whether to change

28  course and grant a petition. . . ."). However, this does not dispute Otero's assertion that the

procedure itself violated 8 C.F.R. § 103.5 or due process.

Based on the arguments of Defendants, the Court does not find this claim or the related due process claim is futile.

Otero has also amended her request for relief. The Court does not find this to be a substantive amendment (rather than a clarification) because in the original Complaint and the First Amended Complaint Otero also requested the Court grant any relief the Court deemed just and proper. The Court finds Otero may file the proposed Second Amended Complaint.

*Motion to Dismiss* (Doc. 17)

Defendants assert that, because their proceedings have been reopened, there is no final agency action which provides this Court with subject matter jurisdiction. The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).

As previously discussed, Otero has established that while the Ninth Circuit recognizes that an agency can reopen removal proceedings, the Ninth Circuit has not similarly concluded as to the reopening of status of adjustment proceedings while a judicial action in pending. There is no basis to conclude, therefore, that the actions of Defendants in vacating its prior decision and reopening the status of adjustment proceedings was valid or that it divested this Court of subject matter jurisdiction. The Court finds dismissal for lack of subject matter jurisdiction is not appropriate.

Accordingly, IT IS ORDERED:

1.     The Court's previous Order granting in part the Motion for Preliminary Injunction and/or Temporary Restraining Order (Doc. 25) is CONFIRMED.

2.     Paragraph 2 of the Court's October 27, 2016, Order (Doc. 29) is AMENDED to state:

2.     The June 15, 2016, Order of Defendants having been issued without authority as this judicial case has been initiated, the June 15, 2016,

1                       Order of Defendants reopening the status of adjustment proceedings is

2                       STAYED.   The Notice of Defendants scheduling an interview for

3                       October 28, 2016, is VACATED.

4   3.      The Court's Order enjoining Defendants from requiring Otero to appear at a

5             new interview on her adjustment of status application, or take any adverse

6             action against Otero for not appearing at such an interview is CONFIRMED.

7   4.      Pursuant to Fed.R.Civ.P. 65(c), a security/bond of $0 is required.

8   5.      The Motion to Reset Preliminary Injunction Hearing (Doc. 30) is GRANTED.

9             The Preliminary Injunction Hearing is continued to December 1, 2016, at 1:30

10            p.m.

11  6.      As discussed between counsel and court staff, the parties shall submit a

12            stipulation on or before November 8, 2016, indicating their agreement to

13            continue the Preliminary Injunction hearing.

14  7.      Counsel shall file their witness and exhibit lists on or before November 28,

15            2016, by noon.

16  8.      The Motion for Leave to File Second Amended Complaint (Doc. 18) is

17            GRANTED.  Otero shall file her Second Amended Complaint within ten days

18            of the date of this Order.  *See* ECF Administrative Policies and Procedures

19            Manual § II.H ("If the motion to amend is granted, the party seeking the

20            amendment must file the amended pleading with the court and serve it on the

21            other parties.").

22  9.      The Motion to Dismiss (Doc. 17) is DENIED.

23  DATED this 2nd day of November, 2016.

24

25

26                            Cindy K. Jorgenson

27                           United States District Judge

28