**Matthew H. Green**
AZ Bar No. 020827
**LAW OFFICES OF MATTHEW H. GREEN**
130 West Cushing Street
Tucson, Arizona 85701
Telephone: (520) 882-8852
Email: mgreenh@azbar.org
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carmen FIGUEROA OTERO and Alberto OTERO, | Case No. 4:16-cv-00090-CKJ |
| Plaintiffs | |
| v. | **PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| JEH JOHNSON, Secretary for the Department of Homeland Security; LEON RODRIGUEZ, Director for the United States Citizenship and Immigration Services ("CIS"); AL GALLMANN, District Director for the Phoenix CIS, Julie Hashimoto, Director for the Tucson Field Office of CIS | (HONORABLE CINDY K. JORGENSON) |
| Defendants | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW Carmen Figueroa Otero (previously known as Carmen Castaneda Otero), by and through counsel undersigned, and timely files this Complaint for Declaratory and Injunctive Relief in accordance with Federal Rules of Civil Procedure 8(a), 57, and 65. Ms. Figueroa applied for the affirmative immigration benefit of adjustment to permanent resident status and was denied. As this denial was erroneously based on an *unknowing* false claim to

U.S. citizenship, Ms. Figueroa brings this declaratory and injunctive action to compel Defendants to reconsider her adjustment of status application and grant her status as a permanent resident.

## I.   BACKGROUND AND STATEMENT OF CASE AND FACTS

1. Carmen Figueroa Otero is a forty-five-year-old citizen of Mexico who resides in Marana, Arizona.

2. <u>Alberto Otero is Ms. Figueroa Otero's U.S. citizen husband and a technical sergeant in the United States Air Force.</u>

3. Ms. Figueroa has lived in the United States nearly all of her life.

4. When Ms. Figueroa was growing up, her mother told her she was a U.S. citizen because she had been born in Texas.

5. Ms. Figueroa was permitted to enroll in public schools in the U.S., was issued a delayed U.S. birth certificate, and obtained a U.S. passport, based on her mother's account of her citizenship and birth location.

6. Ms. Figueroa also honorably served for ten years as a law enforcement officer for the Arizona Department of Public Safety (DPS), a position that requires U.S. citizenship.

7. Throughout her youth and adulthood, Ms. Figueroa would take casual trips to Mexico using her U.S. forms of identification and crossing the border as a U.S. citizen.

8. The most recent of these trips was in or around May of 2013, when she crossed with her passport.

9. Each time Ms. Figueroa presented herself and her identification to government officials, she believed in good faith that she was a U.S. citizen.

10. However, shortly after her May 2013 trip, Ms. Figueroa's brother was suddenly denied a

U.S. passport on the ground he was a citizen of Mexico, even though his mother had always told him, as she had told Ms. Figueroa, that he was born in Texas and was a citizen of the United States.

11. This was the first time Ms. Figueroa became aware she had also been born in Mexico and was not a U.S. citizen.

12. Ms. Figueroa has not made any claims to U.S. citizenship since learning her true identity.

13. After discovering she was not a citizen, Ms. Figueroa decided to apply for an immigrant visa to allow her to continue to live in the United States.

14. Ms. Figueroa applied for and was granted classification as an "immediate relative" of her husband, Mr. Alberto Otero, who is a U.S. citizen and resident of Marana, Arizona.

15. An "immediate relative" of a U.S. citizen is instantly "eligible to receive an immigrant visa," as long as she can demonstrate she "was inspected and admitted or paroled into the United States." See INA § 201(b), 8 U.S.C. § 1151(b); INA § 245(a), 8 U.S.C. 1255(a).

16. On January 6, 2014, Ms. Figueroa used her classification as an immediate relative to apply for an immigrant visa using a Form I-485, Application to Register Permanent Residence or Adjust Status.

17. Shortly after filing her I-485 application for adjustment of status, USCIS provided Ms. Figueroa Otero with a Request for Evidence ("RFE"), asking her to submit evidence of her lawful admission or parole into the United States.

18. On April 14, 2014, Plaintiff, through undersigned counsel, responded to the RFE, and explained to Defendants that Ms. Figueroa Otero's "last entry into the United States after she presented her passport, and was inspected, upon return from vacation in Mexico. Her passport was appropriately stamped by Cusoms and Border Protection officials. However,

she is unable to provide USCIS with a copy of her passport, or any pages therein, because Special Agents from the U.S. Department of State revoked Ms. Figueroa Otero's passport on or about September 20, 2013."

19. Ms. Figueroa Otero also advised Defendants, in undersigned counsel's correspondence of April 14, 2014, that she was "prepared to answer any questions about the circumstances of her last entry, after inspection, on her then-valid U.S. passport, at the time of her interview at the USCIS Tucson Field Office."

20. On May 15, 2014, Defendants issued a Request for Applicant to Appear for Initial Interview, and scheduled Ms. Figueroa Otero's adjustment of status interview for Monday, June 23, 2014.

21. On June 5, 2014, undersigned counsel corresponded with then Acting Field Office Director Juan Guerra, requesting that USCIS make arrangements to have Plaintiff's adjustment of status interview recorded. *See* Exhibit D, Letter from Matthew Green to Juan Guerra, June 5, 2014.  In that letter, undersigned counsel explained that Plaintiff was the subject of a criminal investigation by the U.S. Attorney's Office and the U.S. Department of State.  Specifically, the investigation concerned whether probable cause existed to believe whether Ms. Figueroa Otero had violated any federal criminal laws in obtaining her U.S. passport or presenting her U.S. passport for admission into the United States.

22. Over the next several months, Mr. Guerra and undersigned counsel continued to correspond via electronic mail (email) on the subject of whether Defendants would accommodate Ms. Figueroa Otero's request to have her interview recorded.  Ultimately, Ms. Figueroa Otero's adjustment of status interview was rescheduled for January 29, 2015.

23. On January 29, 2015, USCIS Officer John Nelson conducted Ms. Figueroa Otero's adjustment of status interview at the Tucson Field Office. The interview lasted for over an hour, and Mr. Nelson extensively questioned Ms. Figueroa Otero about her past, including her childhood. He also questioned Ms. Figueroa Otero specifically about the circumstances of how she discovered the truth about her alienage.

24. Several minutes into the interview, the adjudicator, Mr. Nelson, first acknowledged that he was familiar with the extraordinary, and well-publicized, facts of Ms. Figueroa Otero's case, when he confirms that Ms. Figueroa Otero was previously employed as a police officer with the Arizona Department of Public Safety (DPS). Officer Nelson stated that "there's a whole mess going on, and we're going to try to get that squared away now; right?"

25. Shortly thereafter, Mr. Nelson started questioning Ms. Figueroa Otero about the circumstances surrounding her acquisition of the delayed U.S. birth certificate that she presented to DPS when applying for her job as a police officer. For the next twenty minutes, Officer Nelson embarked on a thorough exploration of Ms. Figueroa Otero's past. The *only* relevance these questions could arguably have had to the adjustment interview is to determine whether or not Ms. Figueroa Otero reasonably knew or should have known that she was a U.S. citizen prior to the events that led to the revocation of her U.S. passport in 2013.

26. About five minutes later, Mr. Nelson began questioning Ms. Figueroa Otero again about the same subjects. Officer Nelson gave it a final attempt one hour and four minutes into the recording, and his questions were even more highly focused on the issue of potential false claim at that point.

27. <u>At the end of the interview, Mr. Nelson acknowledged the potential finding of a false claim to U.S. citizenship as a ground of inadmissibility when he stated "we're probably going to still have issues with adjustment. . . ."</u>

28. <u>Upon returning to his office from the adjustment of status interview on January 29, 2015, undersigned counsel wrote a letter to Mr. Nelson, thoroughly explaining why, under the relevant immigration law, Ms. Figueroa Otero is not inadmissible for having made a knowing false claim to U.S. citizenship.</u>

29. On September 28, 2015, the U.S. Department of Homeland Security ("DHS"), CIS, Tucson Field Office denied Ms. ~~Figueroa's~~ Figueroa-Otero's application.

30. The Tucson Field Office is under the direct supervision and control of Defendant Julie Hashimoto.

31. The Tucson Field Office is an agent of the other Defendants named in this suit..

32. The Tucson Field Office stated that it was denying the application because Ms. Figueroa <u>Otero</u> had not been "inspected and admitted or paroled into the United States," because she had used her improperly-issued U.S. passport to gain entry into the country as a U.S. citizen in May 2013.

33. The Tucson Field Office did not allege or conclude that Ms. Figueroa <u>Otero</u> had *fraudulently* used her passport or claimed U.S. citizenship in a *knowingly* false manner.

34. The Tucson Field Office grounded its denial solely on the fact that Ms. Figueroa <u>Otero</u> was not actually entitled to be inspected and admitted as a citizen in May 2013, regardless of her good faith.

35. This denial has no basis in the law.

36. To conceal its lack of legal footing, the Tucson Field Office changed a lengthy block

quotation from a precedential case to make it seem like the case supports its decision.

37. The changed quote made up the entirety of the legal analysis in the Tucson Field Office's written decision.

38. The changed quote came from *Matter of Pinzon*, 26 I&N Dec. 189, 191–92 (BIA 2013), but was altered with one additional phrase and another redacted phrase, in order to give it the opposite meaning from what *Pinzon* and its predecessors had held

39. In its written decision, the Tucson Field Office pulled its entire legal analysis directly from the *Pinzon* case.

40. The Tucson Field Office did not include a citation to *Pinzon*, making it more difficult to discover the text had been copied and pasted, as well as critically altered.

41. After receiving the denial, Ms. Figueroa <u>Otero</u> timely urged the Tucson Field Office to reconsider its denial and pointed out the adulterated quotation of *Pinzon*, by filing a Form I-290B, Motion to Reconsider.

42. Ms. Figueroa <u>Otero</u> further explained that the Tucson Field Office's reasoning was contrary to more than fifty years of binding precedent from the Board of Immigration Appeals (BIA) and the U.S. Court of Appeals for the Ninth Circuit.

43. On December 18, 2015, the Tucson Field Office nevertheless declined to reopen or reconsider its denial of Ms. ~~Figueroa's~~ <u>Figueroa-Otero's</u> adjustment of status application.

44. In the December 18th denial, the Tucson Field Office again refused to cite to *Pinzon*, and listed only the cases cited therein as forming the basis for its conclusion; it listed these cited cases *without* analyzing their holdings.

45. Had the Tucson Field Office analyzed these cases' holdings, it would have seen that binding precedent deems an entry using a *good faith* claim to citizenship to be an

inspection and admission for purposes of an adjustment of status application. See *Matter of Quinlantan*, 25 I&N Dec. 285, 290 (BIA 2010) ("[A]n alien who had physically presented herself for questioning and made no *knowing* false claim of citizenship had satisfied the 'inspected and admitted' requirement of section 245(a) of the [Immigration and Nationality] Act") (emphasis added), *Matter of F-*, 9 I&N Dec. 54, 56 (9 Reg'l Comm'r, Ass't Comm'r 1960) ("[W]here a person presented himself to an immigrant inspector and stated that he was a citizen of the United States, honestly believing this to be the truth, that person did not enter without inspection"). See also *Matter of Wong*, 12 I&N Dec. 733, 734 (BIA 1968) (refusing to dissolve the distinction between good-faith and bad-faith claims to citizenship and holding that "an alien who honestly believed that he was a citizen and appeared before an immigrant inspector can properly be considered to have been inspected within the meaning of the immigration laws").

46. The *only* reason the Tucson Field Office gave for denying Ms. ~~Figueroa's~~ <u>Figueroa Otero's</u> adjustment of status application was that her unwittingly inaccurate claim to U.S. citizenship prevented her from being inspected and admitted under the immigration laws.

47. Indeed, because the Tucson Field Office refused to follow binding precedent on its sole ground for denial, Ms. Figueroa <u>Otero</u> was wrongfully prevented from adjusting her status to that of a lawful permanent resident in this country.

48. <u>In a letter dated June 15, 2016 , Defendant Julie Hashimoto advised Ms. Figueroa Otero that it had rendered a decision "on the Service Motion concerning USCIS Denial Notice, dated December 18, 2015."</u>

49. <u>The USCIS decision itself indicates that Plaintiff USCIS, in one fell swoop, 1) made what is essentially a sua sponte motion to reopen Ms. Figueroa Otero's I-485 application for</u>

adjustment of status, 2) proceeded to consider its own motion without any notice to or input from Ms. Figueroa Otero, and 3) subsequently granted its own motion.

50. In the discussion section of the June 15, 2016 decision and order, Defendants state that "[o]n December 18, 2015, USCIS denied your Form I-485, citing that you were not inspected and admitted or paroled. USCIS established that because you were unable to show that you were inspected and admitted or paroled, or that you were exempt from that requirement, you were ineligible as a matter of law to adjust status in the United States."

51. Defendants further write that "[t]he denial stated that as a result of your entry under a false claim to United States citizenship using a United States passport, your entry did not constitute an admission as defined in INA [§] 101 (a)(13)(A). However, USCIS failed to establish at the time of your interview whether your false claim to United States citizenship was made knowingly." Id.

52. The agency then concludes that, "[i]n view of the foregoing and all evidence of record, USCIS moves to grant the Service Motion to Reopen under 8 CFR [§] 103(a)(5) based on the failure to establish whether your false claim to United States citizenship was made knowingly," and proceeded to order "that the motion be granted and the I-485 application be returned to a pending status." Id.

53. On June 17, 2016, Defendants filed their motion to dismiss, in which they claim that, "[s]ince USCIS has withdrawn its denial of Plaintiff's I-485 and reopened the application for reconsideration, there is no final agency action for the Court to review." "Defendants ask this Court to find that Plaintiff's action is moot, and should be dismissed for lack of subject matter jurisdiction." Id.

## II.   JURISDICTION AND VENUE

54. Ms. Figueroa <u>Otero</u> alleges that Defendants, by and through their agent, the Tucson Field Office of CIS, violated INA § 245, 8 U.S.C. § 1255, and the case law that interprets it.

55. "A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Administrative Procedure Act, 5 U.S.C. § 702 (2015).

56. This Court also has original jurisdiction because this is a civil action that "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

57. This Court has jurisdiction to grant the requested relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, which gives it the authority to "declare the rights and other legal relations of any interested party seeking such declaration" and grant "[f]urther necessary or proper relief based on [that] declaratory judgment or decree." *Id*.

58. This Court has further authority to "compel agency action unlawfully withheld" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law" under the Administrative Procedure Act, 5 U.S.C. § 706(1) & (2)(A).

59. Venue is proper in the District of Arizona because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

### III.   CAUSES OF ACTION

**Count One**
**Administrative Procedure Act**

60. Ms. Figueroa <u>Otero</u> re-alleges and incorporates by reference paragraphs 1 through ~~35~~ <u>49</u> above.

61. Defendants' decisions denying Ms. Figueroa <u>Otero's</u> adjustment of status were not in

accordance with law because they were based solely on her good-faith claim to citizenship at her last border crossing, and a good-faith claim to citizenship is not a ground for denying adjustment of status.  See *Matter of Quinlantan*, 25 I&N Dec. at 290; *Matter of F-*, 9 I&N Dec. at 56; *Matter of Wong*, 12 I&N Dec. at 734.

62. Because the only basis identified for the denial was contrary to law, Ms. Figueroa <u>Otero</u> should have been permitted to adjust her status and Defendants' agent's refusal of this permission constituted agency action wrongfully withheld.  See INA § 245, 8 U.S.C. § 1255.

63. Under the Administrative Procedure Act, decisions that are not in accordance with law should be set aside, and agency action that is wrongfully refused should be compelled. 5 U.S.C. §§ 706(1) & (2)(A).

**Count Two**
**Administrative Procedure Act**

64. Ms. Figueroa <u>Otero</u> re-alleges and incorporates by reference paragraphs 1 through ~~38~~ <u>49</u> above.

65. Defendants further wrongfully withheld agency action and abused its discretion when it refused to ~~reopen or~~ reconsider its denial of Ms. ~~Figueroa's~~ <u>Figueroa Otero's</u> adjustment of status application upon good cause shown. See 8 C.F.R. § 103.5.

66. Under the Administrative Procedure Act, agency action that was wrongfully withheld should be compelled and a decision constituting an abuse of an agency's discretion should be set aside. 5 U.S.C. §§ 702(1) & (2)(A).

**Count Three**
**Due Process and Equal Protection under the U.S. Constitution**

67. Ms. Figueroa re-alleges and incorporates by reference paragraphs 1 through ~~42~~ <u>49</u> above.

68. Defendants' agent's decisions denying Ms. ~~Figueroa's~~ <u>Figueroa-Otero's</u> adjustment of status application on a single erroneous ground violated her due process and equal protection rights, which are guaranteed by the Fifth Amendment of the United States Constitution.

### Count Four
### Declaratory Judgment Act

69. <u>Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53, and paragraph 57 above.</u>

70. <u>Pursuant to 8 C.F.R. § 103.5(a), "[w]hen a Service officer, on his or her own motion, reopens a Service proceeding or reconsiders a Service decision, and the new decision may be unfavorable to the affected party, the officer shall give the affected party 30 days after the service of the motion to submit a brief."</u>

71. <u>8 C.F.R. § 103.5(a)(5)(ii) required Defendants to first make a motion, then serve it on Ms. Figueroa Otero.  The applicable regulation then required Defendants to wait 30 days to allow Ms. Figueroa Otero to respond to the motion by submitting a brief.  No action was allowed to be taken on the agency's motion until either a) the expiration of the 30 day response period, or b) the affected party provided notice that she was waiving the 30 day response period.</u>

72. <u>Therefore, as a matter of law, Defendants violated Ms. Figueroa Otero's right to be served with the agency's motion, to file a brief in opposition of the agency's motion, and to have the agency consider Plaintiff's brief prior to making a decision on the motion.</u>

73. <u>Plaintiffs are entitled to a declaratory judgment that, as a matter of law, in granting their own motion to reopen Ms. Figueroa Otero's case without allowing her the opportunity to</u>

respond by filing a brief within 30 days, Defendants' acted without authority and in violation of federal law.

74. Plaintiffs are also entitled to preliminary and permanent injunctions enjoining Defendants from proceeding with any further action on Ms. Figueroa-Otero's case unless and until they permit her to file, and consider, a brief in opposition to the agency's decision to reopen her adjustment of status proceedings.

75. For the reason set forth above, Plaintiffs do not have an adequate remedy at law, they have a likelihood of success on the merits at trial, they have a protectable right to due process of law as prescribed by 8 C.F.R. §103.5(a)(ii), they would be irreparably harmed if Defendants are not preliminarily enjoined from proceeding with their attempts to gather further information through re-interviewing Ms. Figueroa Otero, and the benefit of such a preliminary injunction to Plaintiffs outweighs any burden on Defendants.

### Count Five
### Mandamus

76. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53, 57, and 70 through 72, above.

77. The Mandamus Act, 28 U.S.C. § 1361, provides that district courts shall have jurisdiction over any action in the nature of mandamus, and may compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. Plaintiff must demonstrate that "(1) [his or her] claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997).

78. Plaintiffs' claims as set forth above qualify for mandamus relief because the statutory and constitutional claims are clear, the defendants' duties are not in doubt, and in the case of any remedies not available under the APA, no other adequate remedy is available.

## Count Six
## Fifth Amendment Due Process Clause

79. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 53, 57, and 70 through 72, above.

80. The initial denial of her application, and the subsequent denial of her motion to reconsider, constituted due process violations arising from purely legal, nondiscretionary obligations owed to Ms. Figueroa-Otero, and therefore violated her due process rights.

81. Moreover, the allegations set forth above establish that Defendants had more than adequate opportunity to develop the administrative record, and it has sufficiently done so. Subjecting Ms. Figueroa Otero to another interview on the subject of whether she made a knowing false claim to citizenship would transform questioning into interrogation, and would change the nature of the administrative proceedings from non-adversarial to adversarial, which is prohibited. *See, e.g.,* USCIS Adjudicator's Field Manual ("AFM"), Chapter 15.1(a) (2014) ("Interviews conducted by adjudication officers are non-adversarial in nature, as opposed to a court proceeding involving two attorneys where each advocates a particular position."); *see also* id., Chapter 15.4(a) ("Interview proceedings are not to be adversarial in nature. **The purpose of the interview is to obtain the correct information in order to make the correct adjudication of the case, *not to prove a particular point or to find a reason to deny the benefit sought*.** The purpose is to cover (and discover) all the pertinent information, both favorable and unfavorable to the applicant.)." (Emphasis added).

82. Defendants' actions on June 15, 2016 violated the Due Process Clause.  Not only did Defendants violate their own regulations in depriving Ms. Figueroa Otero of the right to respond to the USCIS motion to reopen, but Defendants also sought to do so for purposes expressly prohibited by their policies and procedures as set forth in the AFM. "The legal

proposition that agencies may be required to abide by certain internal polices is well-established.  As the Supreme Court has stated: 'Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) (*quoting Morton v. Ruiz*, 415 U.S. at 235). "This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Id.*

83. As a proximate result of Defendants' unconstitutional actions in failing to follow their own regulations and procedures, Plaintiffs are suffering and will continue to suffer a significant deprivation of their liberty and property interests without due process of law.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein.  The injunctive and declaratory relief sought by Plaintiffs is necessary to prevent continued and future injury.

### IV.   DEMAND FOR RELIEF

WHEREFORE, Ms. Figueroa Otero and Mr. Otero respectfully request that this Court:

A. ~~Reverse Defendants' agent's decision not to reopen or reconsider its denial of Ms. Figueroa's adjustment of status application~~ Set aside USCIS' flawed findings of fact and conclusions of law;

B. ~~Order Defendants, through the Tucson Field Office, to grant Ms. Figueroa's adjustment of status application~~ Order the matter remanded to USCIS for readjudication of Plaintiff's adjustment of status application consistent with this Court's findings and orders;

C. In the alternative, to issue a judgment declaring that Defendants' violated Ms. Figuero Otero's due process rights under the Fifth Amendment to the U.S. Constitution by failing to allow her to issue a brief in opposition to Defendants' motion to reopen her proceedings,

when such reopening may result in an adverse decision against Ms. Figueroa Otero;

D. <u>Temporarily enjoin the Defendants from taking any further action on Ms. Figueroa Otero's case unless and until they have allowed her to submit a brief in opposition to the reopening of her case, and to subsequently consider the merits of such a brief;</u>

E. <u>Issue a judgment and/or writ of mandamus, ordering Defendants to allow Ms. Figueroa Otero to submit a brief in opposition to the reopening of her case, and to subsequently consider the merits of such a brief;</u>

F. <u>Permanently enjoin Defendants from conducting a subsequent interview of Ms. Figueroa Otero to the extent that it seeks to elicit any additional information about whether she made a knowingly false claim to U.S. citizenship, in that such action by Defendants would violate their own internal procedures, and as a result, the due process rights of Ms. Figueroa Otero;</u>

G. Retain jurisdiction during the adjudication of the adjustment of status application in order to ensure compliance with the Court's orders;

H. Award reasonable costs and attorneys' fees; and

I. Grant such other relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this <u>10th</u> day of <u>November</u>, 2016

**LAW OFFICES OF MATTHEW H. GREEN**

_s/Matthew H. Green_____
Matthew H. Green
Attorney for the Respondent
130 West Cushing Street
Tucson, Arizona  85701
(520) 882-8852

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of November, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrant(s):

Katherine R. Branch
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona  85004-4408
Katherine.Branch@usdoj.gov
Attorney for Defendants